IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JESSIE C. B., | CV 18-25-BU-JCL |
| Plaintiff, | |
| vs. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(c). Plaintiff alleges disability since October 13, 2011, due to multiple sclerosis, degenerative disc disease, Raynaud's syndrome, arthritis, scoliosis, obsessive compulsive disorder, and memory loss. (Doc. 6 at 246). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. §

1

405(g).

Plaintiff was 29 years old on the date her application was filed, and 31 years old at the time of the ALJ's decision in March 2017.

## I. Standard of Review

"As with other agency actions, federal court review of social security determinations is limited." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035,

1038 (9th Cir. 2008) (quoiting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## II. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (quoting 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must determine whether the claimant has any impairments that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R.

§§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, however, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v).

### III.  Discussion

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 13, 2015, the date her application was filed.[1]  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, multiple sclerosis, scleroderma, mild cognitive deficit,

---

1 Because supplemental security income benefits are not payable until the month after the month in which an application is filed, the relevant time period begins with the date of the application.

anxiety disorder/obsessive compulsive disorder, somatoform disorder, and depression. The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Plaintiff impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely consistent with the medical and other evidence of record. The ALJ determined that Plaintiff had the residual functional capacity to perform a reduced range of light work. The ALJ concluded at step four that Plaintiff could not perform any past relevant work, but found her not disabled at step five because there were other jobs in the national economy that she could perform. (Doc. 6, at 86-100).

Plaintiff argues the ALJ's decision is not supported by substantial evidence, and raises five issues on appeal. First, Plaintiff contends the ALJ erred by denying her motion to continue the administrative hearing. Second, Plaintiff maintains the Appeals Council erred by refusing to consider additional evidence she submitted in support of her request for review. Third, Plaintiff argues the ALJ erred at step two by not including fibromyalgia as a severe impairment. Fourth, Plaintiff argues the ALJ erred by finding she did not meet or equal the criteria of a listed impairment.

Finally, Plaintiff argues the ALJ did not properly weigh the medical evidence and did not provide sufficient reasons for discounting certain medical and other source opinions.

## A.    Motion to Continue

Plaintiff argues the ALJ erred by denying her motion to continue the December 8, 2016 hearing, thereby depriving her of the full and fair hearing to which she was entitled.[2] See *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (an ALJ has a duty to conduct a full and fair hearing).

Plaintiff was originally represented by a different attorney, who she retained in early January 2016. (Doc. 6, at 295). On January 5, 2016, with the assistance of her attorney, Plaintiff submitted a request for an administrative hearing. (Doc. 6, at 291). On January 28, 2016, the Commissioner sent Plaintiff a letter acknowledging her request and explaining that she would be notified in writing at least 20 days before the date of her hearing. (Doc. 6, at 296). On October 3, 2016, the Commissioner sent Plaintiff a Notice of Hearing, advising her that her hearing was

---

[2] The Commissioner argues the ALJ's ruling denying Plaintiff's request for a continuance is not subject to judicial review because it is not a final agency action. But because Plaintiff's argument raises the issue of whether she received a full and fair hearing, it is properly considered on judicial review of the Commissioner's final decision. See e.g. *Erickson v. Social Security Administration*, 2016 WL 7507782 , at **7-8 (D. N. Dak. Sept. 13, 2016) (considering whether ALJ erred by denying a motion to continue the administrative hearing).

scheduled to take place on December 8, 2016. (Doc. 6, at 311). On November 15, 2016, Plaintiff's attorney submitted a withdrawal from representation at Plaintiff's request and asked for a continuance of the hearing. (Doc. 6, at 339). Plaintiff's current counsel entered an appearance on November 22, 2016, and several days later submitted another request for a continuance. (Doc. 6, at 450).

The ALJ addressed Plaintiff's request for a continuance at the beginning of the hearing, which proceeded as scheduled on December 8, 2016. Counsel explained that he had only recently entered an appearance and had not had time to adequately prepare for the hearing and schedule anticipated witnesses. (Doc. 6, at 191-92). The ALJ denied the motion for a continuance orally at the hearing, and set forth the basis for her ruling in her subsequent written decision. (Doc. 6, at 86-87; 191). The ALJ noted that Plaintiff had been represented by an attorney since January 2016, but apparently lost confidence in him and decided to change representatives just a few weeks before the hearing. (Doc. 6, at 86, 339). To accommodate counsel's concerns, the ALJ held the record open for 20 days to give him the opportunity to further review the file and make objections, and to submit additional evidence in support of Plaintiff's application. (Doc. 6, at 88).

Plaintiff argues it was not sufficient for the ALJ to hold the record open for such a short period of time and claims she did not have time to "update [her]

medical records through additional visits with [her] treating physicians." (Doc. 14, at 7). Plaintiff takes the position that the ALJ was required to grant a continuance under 20 C.F.R. § 416.1436, which permits an ALJ to reschedule a hearing upon a showing of good cause.[3] Certain circumstances per se constitute good cause, including a death in the family or serious injury. 20 C.F.R. § 416.1436(f)(1). In other circumstances, the ALJ determines whether good cause exists based on the reason for the requested continuance, the supporting facts, and the impact of the proposed change on the efficient administration of the hearing process. 20 C.F.R. § 416. 1436(g). The regulation provides examples of circumstances that might give rise to good cause, including when the claimant's "representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing." 20 C.F.R. § 1436(g)(ii). Because she retained current counsel approximately two weeks before the scheduled hearing, Plaintiff maintains she established good cause for a continuance and the ALJ erred by finding otherwise.

Contrary to Plaintiff's argument, however, Section 1436(g) does not identify circumstances that per se constitute good cause; rather, it identifies certain factors the ALJ must consider in determining whether the requested continuance is

---

[3] Plaintiff cites 20 C.F.R. § 404.936, which applies to applications for disability insurance benefits. Because Plaintiff applied for supplemental security income benefits, 20 C.F.R. § 416.1436 applies here.

warranted under the circumstances. 4 Soc. Sec. Law & Prac. § 51:26; *Nuzzo v. Astrue*, 2012 WL 685300, at *8 (N.D. Ohio March 2, 2012). Here, the ALJ noted that this was not a case in which the claimant was unable to find a representative until just before the hearing. Rather, the ALJ pointed out that Plaintiff had been represented by counsel for more than ten months – from the time she submitted her request for a hearing in January 2016 until she asked her counsel to withdraw for some unspecified reason just a few weeks before her scheduled hearing. The ALJ further found that Plaintiff's new counsel had not provided any persuasive justification for the appearance of witnesses rather than reliance on their records and opinion evidence, and kept the record open for 20 days after the hearing to allow counsel to make objections and submit additional evidence. The ALJ properly considered the factors set forth in Section 1436(g) and found that a continuance was not warranted under the circumstances. Thus, the ALJ did not err in denying Plaintiff's request for a continuance.

**B.    Additional Evidence Submitted to the Appeals Council**

While the record was still open after the hearing, Plaintiff submitted additional evidence which the ALJ considered in reaching her decision. (Doc. 6, at 909-937). After the ALJ issued her written decision in March 2017, Plaintiff also submitted additional evidence to the Appeals Council. That evidence included the

following: (1) Western Montana Medical Center records dated May 1, 2017 to August 2, 2017; (2) Granite County Medical Center records dated April, May, and July 2017; (3) PMT Neurology Specialist records dated June 22, 2016 to February 15, 2017, and June 28, 2017; (4) a mental residual functional capacity assessment by licensed clinical social worker Marcella Grayson dated May 8, 2017; (5) records from Grayson dated July 28, 2016 to April 20, 2017; (6) a June 2011 residual functional capacity assessment by Dr. Susan English; (7) a letter from Grayson dated December 15, 2016; (8) a residual functional capacity assessment by Sapphire Physical Therapy dated April 14, 2017, and; (9) Community Medical Center records dated October 20, 2014 to January 11, 2017. (Doc. 6, at 31-82; 107-186).

The Appeals Council will grant a claimant's request for review if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision" and the claimant shows "good cause" for not submitting the evidence earlier. 20 C.F.R. § 416.1470(a)(5) & (b) (effective January 17, 2017). Plaintiff argues the Appeals Council should have considered the additional evidence she submitted because she had good cause for not providing it to the ALJ, and it is new, material, and relates to the period before the ALJ's decision in March 2017. As a result, Plaintiff asks the Court to "rule" that the

additional evidence she provided to the Appeals Council is "admissible." (Doc. 9, at13).

The Commissioner maintains that Plaintiff is, in effect, seeking judicial review of the Appeals Council's decision denying her request for review. The Ninth Circuit has held that federal courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). Citing *Brewes*, the Commissioner argues this Court does not have jurisdiction to review the Appeals Council's decision denying Plaintiff's request for review.

But Plaintiff is not asking the Court to review and reverse the Appeals Council's decision. Rather, she is contending that the Appeals Council improperly rejected the additional evidence she submitted in support of her request for review of the ALJ's decision. In asking the Court to "rule" that the additional evidence is "admissible," it appears that Plaintiff is seeking to have the additional evidence considered by the Court as part of the administrative record.

Relying on *Brewes*, the Commissioner argues the additional evidence Plaintiff submitted to the Appeals Council is already part of the administrative record subject to this Court's review. *Brewes* held that "when a claimant submits

evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1162-63. The Commissioner maintains that the Appeals Council considered the additional evidence in denying review of the ALJ's decision, which means that this evidence is now part of the administrative record.

The problem with this argument is that while the Appeals Council acknowledged receiving the additional evidence, it did not actually "consider" it. See *Ruth v Berryhill*, 2017 WL 4855400, *8-9 (D. Or. Oct. 26, 2017) (discussing the difference between the Appeals Council "looking at" new evidence as opposed to "considering" it). Unlike *Brewes*, the Appeals Council determined that Plaintiff did not have good cause for failing to submit the additional evidence earlier and made clear that it "did not consider" that evidence in denying her request for review. (Doc. 6, at 8). Where, as here, the Appeals Council finds that good cause for the late submission of additional evidence is lacking, it will send the claimant "a notice that explains why it did not accept the additional evidence" and will advise her of her right to file a new application. See 20 C.F.R. § 416.1470(c). That is exactly what the Appeals Council did here. It sent Plaintiff a notice explaining

that it did not accept the additional evidence because she had not shown good cause for failing to submit it before the hearing, and advising her of her right to file a new application. (Doc. 6, at 8). Because the Appeals Council did not consider the additional evidence, it did not become part of the administrative record.

To extent Plaintiff argues this matter should be remanded because the Appeals Council improperly found she did not have good cause for submitting the additional evidence more than 20 days after the hearing, the Court disagrees. See *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (where the Appeals Council erroneously fails to consider evidence, remand is appropriate so that the ALJ can reconsider his or her decision in light of the new evidence). The record supports the Appeals Council's determination. Much of the evidence Plaintiff submitted to the Appeals Council predated the ALJ's decision dated March 15, 2017, including several medical records, Grayson's letter, and Dr. English's assessment. Plaintiff has not shown good cause for failing to submit this evidence earlier. Plaintiff also submitted two residual functional capacity assessments that were completed after the date of the ALJ's decision, but has not shown why she and her original counsel did not seek those assessments prior to the hearing. To the extent Plaintiff submitted medical records generated after the ALJ's decision in the normal course of treatment suggesting that her condition may

have worsened, Plaintiff's remedy is to file a new application for benefits. Because Plaintiff failed to show good cause for not submitting this additional evidence earlier, the Appeals Council properly refused to consider it and it is not part of the administrative record.

To the extent Plaintiff argues this case should be remanded under sentence six of 42 U.S.C. § 405(g), the Court disagrees. Under sentence six, a court may remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001). As discussed above, Plaintiff has not shown good cause for failing to incorporate her additional evidence into the records. Thus, there is no basis for a remand under sentence six of 42. U.S.C. § 405(g), which similarly requires a showing of good cause.

## C.     Severe Impairments

Plaintiff argues the ALJ erred at step two by not including fibromyalgia as one of her severe impairments.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). At step two, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

Plaintiff easily cleared the step-two hurdle because the ALJ found that she had several severe impairments. But with respect to her alleged fibromyalgia, the ALJ found there was not enough evidence to establish a medically determinable impairment. To establish fibromyalgia as a medically determinable impairment, a claimant must have a positive diagnosis from a medically acceptable source and evidence of (1) at least 11 out of 18 positive tender points on a physical examination or (2) widespread pain, with repeated manifestations of six or more

fibromyalgia symptoms and evidence that other disorders that could cause the symptoms were excluded. SSR 12-2p.

The ALJ recognized that Plaintiff had been diagnosed with fibromyalgia, but found there was no evidence documenting at least 11 positive tender points. The ALJ further found that Plaintiff had other impairments, such as multiple sclerosis and degenerative disc disease, that appeared to account for most, if not all of her physical symptoms. (Doc. 6, at 90). Plaintiff does not challenge these findings, but simply argues the ALJ failed to adequately analyze her condition because she had been diagnosed with fibromyalgia. As SSR 12-2p makes clear, however, a diagnosis is only one of the factors necessary to establish fibromyalgia as a medically determinable impairment. Plaintiff does not point to any evidence showing that she met the remaining criteria, and the ALJ's step two determination that Plaintiff did not have the medically determinable impairment of fibromyalgia is supported by substantial evidence.

### D.    Listed Impairments

Plaintiff argues the ALJ erred at step three by finding that she did not satisfy the criteria for presumptive disability under Listing 11.09 for multiple sclerosis, Listing 12.04 for affective disorders, or Listing 12.06 for anxiety related disorders.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

    1.    <u>Listing 11.09</u>

Under Listing 11.09, a claimant must have multiple sclerosis characterized by (A) disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities or (B) marked limitation in physical functioning and either understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.09(A)-(B). A marked limitation in physical functioning means the individual was "seriously limited in the ability to initiate, sustain, and complete work-related physical activities" like standing, balancing, walking or using her upper extremities for fine and gross movements. Listing 11.00(G)(2)(a).

Plaintiff argues there are medical reports showing that she "had problems stemming from her [multiple sclerosis] that met the above limitation[s]," but does not explain what reports she is referring to or otherwise point to any medical evidence showing that she had such extreme or marked limitations. (Doc. 9, at 22). To the contrary, Plaintiff's physical examinations routinely showed she had normal gait, normal strength, normal range of motion of the extremities, negative straight leg raises, full strength in all major muscle groups, and the appearance of no acute distress. (Doc. 6, at 95, 161, 522, 564, 659, 659, 674, 711). Substantial evidence

supports the ALJ's finding that Plaintiff did not meet or medically equal the criteria of Listing 11.09.

2. Listings 12.04 and 12.06

Plaintiff maintains the ALJ erred by finding she did not meet or equal the criteria for presumptive disability under Listing 12.04 for affective disorders or 12.06 for anxiety related disorders.

Listings 12.04 and 12.06 require that a claimant satisfy the listed A and B or A and C criteria. The A criteria of both listings require medical documentation of the relevant mental disorder characterized by certain symptoms. The B and C criteria of both listings are the same. The B criteria require evidence of extreme limitation of one, or marked limitation of two, of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing oneself. The C criteria require evidence of a "serious and persistent" mental disorder along with evidence of (1) medical treatment, mental health therapy, psychosocial support, or highly structured setting that is ongoing and that diminishes the symptoms and signs of your mental disorder; and (2) marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not

already part of your daily life. 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.04 and 12.06.

The ALJ considered both listings, but found based on the medical and other evidence of record that Plaintiff's mental impairments did not meet or equal the above criteria. With respect to the B criteria, the ALJ found that Plaintiff had: mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. (Doc. 6, at 91). With respect to the C criteria, the ALJ found no evidence of ongoing treatment as described in the listing or marginal adjustment. (Doc. 6, at 92).

Plaintiff argues generally that the medical evidence and her subjective testimony show that she meets or equals these criteria, but does not explain how the ALJ's analysis and findings were flawed. Plaintiff maintains that an intake assessment, two letters, and a mental assessment form provided by her licensed clinical social worker, Marcella Grayson, show that her mental impairments satisfy the requisite criteria. (Doc. 6, at 500-512; 849-859; 927-930). But Grayson does not directly address many of the requisite criteria or provide any objective findings. Moreover, as discussed below, the ALJ provided germane reasons for rejecting

Grayson's opinions. Plaintiff further argues that neuropsychological testing administered by Dr. Sherry Reid in May 2014 showed limitations in processing speed. (Doc. 6, at 607). But slower processing speed is not sufficient to satisfy each of the listing's many requirements. The ALJ noted that Plaintiff had "depressed processing speed," but nevertheless found based on substantial evidence of record that Plaintiff's mental impairments did not satisfy the B criteria. (Doc. 6, at 91). To the extent Plaintiff contends her own testimony shows that her impairments were of listing-level severity, the ALJ discounted that testimony for several reasons, which Plaintiff does not challenge.

The Court thus concludes that the ALJ's step-three analysis is supported by substantial evidence and free of error.

### E.    Medical Opinions

Plaintiff maintains the ALJ erred by not giving more weight to the opinion of nurse practitioner Ashley Westphal.

Under the regulations in effect at the time Plaintiff filed her claim, nurse practitioners were considered "other sources" rather than "acceptable medical sources."[4] 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). The opinion of a nurse

---

4 For claims filed on or after March 27, 2017, licensed advanced practice registered nurses and licensed physician assistants are acceptable medical sources. 20 C.F.R. §§ 404.1502(a), 416.902(a).

practitioner may nevertheless be considered that of an "acceptable medical source" if the nurse practitioner work closely with and under the supervision of a physician. See *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1234 (9th Cir. 2011). Other sources "cannot establish the existence of a medically determinable impairment" but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. SSR 06-03p. See also 20 C.F.R. §§ 404.1513(d), 416.913(d). While an ALJ must provide specific and legitimate reasons based on substantial evidence to discount evidence from an "acceptable medical source," evidence from an "other source" is not entitled to the same deference and may be discounted if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

Plaintiff argues the ALJ erred by not giving more weight to a December 20, 2016 functional assessment prepared by Westphal. Westphal indicated that Plaintiff had been diagnosed with multiple sclerosis, fibromyalgia, obsessive compulsive disorder, gastroesophageal reflux disease, chronic back pain, degenerative disc disease, Raynaud's syndrome, and arthritis. Westphal wrote that Plaintiff had difficulty in social situations due to anxiety, experienced profound fatigue due to multiple sclerosis, and had difficulty processing. She found that

Plaintiff could not stand for more than "1-2 hours" or lift more than 5 pounds due to back pain, and could not sit or stand "longer than 2 hours." She stated that many of Plaintiff's impairments were getting worse, and she did not believe Plaintiff was capable of working. (Doc. 6, at 932-935).

Plaintiff points out that Westphal's assessment was also signed by Dr. Terry Jones, and argues the ALJ erred by treating it as an "other source" opinion. When discussing Westphal's treatment notes and her December 20, 2016 assessment, the ALJ noted that as a nurse practitioner, she was not an acceptable medical source under agency regulations. (Doc. 6, at 97). Because Dr. Jones endorsed Westphal's December 20, 2016 assessment, however, it should have been considered as the opinion of an acceptable medical source. While the ALJ failed to expressly recognize this, she nevertheless provided specific and legitimate reasons for discounting Westphal's opinion.

The ALJ found that Westphal's opinion as to the severity of Plaintiff's physical and mental limitations was not consistent with her exam findings or treatment notes, the findings of other providers, or Plaintiff's treatment history. (Doc. 6, at 970). This reason is supported by substantial evidence. For example, Westphal's statement that Plaintiff could not sit or stand for more than 1-2 hours is not consistent with her physical examination notes, which were routinely normal

23

and did not document any ongoing concerns or contain any findings that would support such physical limitations. (Doc. 6, at 705-750; 882-912). The ALJ further found that the limitations Westphal identified were not consistent with her activities of daily living, noting in particular that Plaintiff testified she continues to drive short distances despite Westphal's opinion that she should not. (Doc. 6, at 97).

The ALJ reasonably weighed the conflicting medical opinions, and provided specific and legitimate reasons for discounting Westphal's assessment in favor of those provided by the state agency physicians who identified limitations consistent with the ability to perform a range of light work. (Doc. 6, at 97-98; 246-280).

## F.    Other Source Opinions

Plaintiff next argues the ALJ did not give sufficient weight to various letters and functional capacity assessments by her licensed clinical social worker, Marcella Grayson. Grayson began working with Plaintiff in November 2014, and has seen her on a regular basis since then. In December 2016, Grayson wrote a letter stating that Plaintiff had obsessive compulsive disorder and her symptoms from this impairment alone precluded her from working full time. (Doc. 6, at 927-930). In 2015, Grayson wrote two letters stating that Plaintiff was unable to work due to her mental impairments. (Doc. 6, at 849, 853). In August 2015, Grayson

completed an assessment form indicating that Plaintiff had "fair" to "no" ability to perform most work-related mental tasks. (Doc,. 6, at 851-52).

As a licensed clinical social worker, Grayson is considered an "other medical source" SSR 06-3p. See also 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ can reject such other source opinions for "germane" reasons, and need not cite the specific and legitimate reasons necessary to reject the contradicted opinion of an acceptable medical source. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

The ALJ considered Grayson's opinions but gave them minimal weight for several reasons, including that they were not supported by objective findings, were based in large part on Plaintiff's subjective symptoms, and were not consistent with other evidence in the record. (Doc. 6, at 97). Plaintiff does not directly challenge any of these reasons, all of which are supported by substantial evidence. As the ALJ noted, for example, Grayson's opinions contained little in the way of explanation and were "almost nothing but a recitation of [Plaintiff's] symptoms and complaints." (Doc. 6, at 97). Grayson kept few records from her counseling sessions, and the ALJ legitimately observed that what records she did keep mentioned Plaintiff's "slowed thinking" but contained "very little else in the way of objective verification." (Doc. 6, at 97). And significantly, the ALJ found that

Grayson's opinions were not consistent with Plaintiff's performance on the WAIS-VI and WRAT, which showed some limitations but overall reflected reading, writing, and spelling abilities commensurate with Plaintiff's education level, very little limitation in Plaintiff's ability to apply or remember information, and the ability to complete tasks. (Doc. 6, at 97). These were sufficiently germane reasons for rejecting Grayson's opinions as to the extent of Plaintiff's mental limitations.[5]

## IV.   <u>Conclusion</u>

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 21st day of March, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge

---

[5]  In giving Grayson's December 2016 letter little weight, the ALJ mistakenly stated that she had not treated Plaintiff after April 2015. Records submitted to, but not considered by, the Appeals Council show that Plaintiff continued seeing Grayson in 2016 and 2017. But because the ALJ provided other germane reasons for discounting Grayson's opinion, this error was harmless.